UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PRO 49 DEVELOPMENT, LLC, a
California limited liability
company,

              Plaintiff,

     v.

NESS EXPRESS 1, LLC, a Delaware
limited liability company; ADAM
DECKER, an individual; JOSEPH
DECKER, an individual, et al.,

              Defendants.

No. 2:24-cv-01850-JAM-JDP

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS**

Before the Court is Defendants Adam Decker and Joseph
Decker's (collectively, the "Deckers") motion to dismiss. See
Mot., ECF No. 22. Pro 49 Development ("Plaintiff") opposes. See
Opp'n, ECF No. 24. The Deckers reply. See Reply, ECF No. 26.
For the following reasons, Defendants' motion is DENIED.[1]

    I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff originally filed suit in the Superior Court of
California, County of Placer. See Notice of Removal, ECF No. 1.
Defendants then properly removed the case to federal court under

---

[1]This motion was determined to be suitable for decision without
oral argument. E.D. Cal. L.R. 230(g). The hearing was
scheduled for November 19, 2024.

1

1    diversity jurisdiction.  See id.; see also Order Denying Motion

2    to Remand, ECF No. 25.

3        This controversy arises out of a lease between Plaintiff and

4    Defendant Ness Express 1 ("Ness") for the establishment of a car

5    wash under the franchise of Defendant Tommy's Express.  See Comp.

6    ¶ 1, ECF No. 1.  Plaintiff alleges that Ness violated the lease

7    and that named defendants (the Deckers and Ryan Essenburg)

8    interfered with the lease.  See id.  Plaintiff brings thirteen

9    causes of action, including breach of contract.  See id. at 1.

10       The Deckers now move to dismiss nine causes of action for

11   failure to state a claim upon which relief can be granted.  Mot.

12   at 1-2.  Specifically, the Deckers argue that Plaintiff has

13   failed to adequately allege that they are the alter ego of Ness.

14   See id. at 4.  Plaintiff responds that it has sufficiently pled

15   this allegation.  See Opp'n at 1.

16                         II.   OPINION

17       A.   Legal Standard

18       A Rule 12(b)(6) motion challenges the sufficiency of a

19   complaint for "failure to state a claim upon which relief can be

20   granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to

21   dismiss [under 12(b)(6)], a complaint must contain sufficient

22   factual matter, accepted as true, to state a claim to relief

23   that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S.

24   662, 678 (2009) (internal quotation marks and citation omitted).

25   Plausibility requires "factual content that allows the court to

26   draw the reasonable inference that the defendant is liable for

27   the misconduct alleged."  Id.  While "detailed factual

28   allegations" are unnecessary, the complaint must allege more

                              2

1   than "[t]hreadbare recitals of the elements of a cause of

2   action, supported by mere conclusory statements." Id.

3   Conclusory allegations are not to be considered in the

4   plausibility analysis. Id. at 679 ("While legal conclusions can

5   provide the framework of a complaint, they must be supported by

6   factual allegations."). When a plaintiff fails to "state a

7   claim upon which relief can be granted," the Court must dismiss

8   the claim. Fed. R. Civ. P. 12(b)(6).

9        B.   Request for Judicial Notice

10       Under Federal Rule of Evidence 201, a district court may

11  take judicial notice of a fact that is "not subject to

12  reasonable dispute because it can be accurately and readily

13  determined from sources whose accuracy cannot reasonably be

14  questioned." Fed. R. Evid. 201(b)(2). A court may therefore

15  take judicial notice of matters of public record. Reyn's Pasta

16  Bella LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir.

17  2006). It also is proper for a court to consider evidence

18  subject to judicial notice while deciding a motion to dismiss.

19  Weston Fam. P'ship LLLP v. Twitter, Inc., 29 F.4th 611, 617 (9th

20  Cir. 2022).

21       The Deckers request that the Court take judicial notice of

22  Ness's State of Delaware Certification of Formation of Limited

23  Liability Company. See Request for Judicial Notice, ECF No. 22-

24  2. The Certification shows that Ness was formed on June 6,

25  2023, and that Joseph Decker signed as the "Authorized Person."

26  See id. Because the Deckers seek judicial notice of a document

27  that is a matter of public record and the request is unopposed,

28  the Court GRANTS this request.

3

1
C.   Alter Ego Liability

2      The Court must first determine the law that will apply to

3  its alter ego analysis.  "Where a statute dictates the choice-of-

4  law, the court need not apply a common law choice-of-law

5  analysis."  Wehlage v. EmpRes Healthcare Inc., 821 F. Supp. 2d

6  1122, 1128 (N.D. Cal. 2011) (citing Barclays Discount Bank Ltd.

7  v. Levy, 743 F.2d 722, 725 (9th Cir. 1984)).  California

8  Corporations Code Section 17708.01 states that "[t]he law of the

9  state or other jurisdiction under which a foreign limited

10 liability company is formed governs . . . the liability of a

11 member as member and a manager as manager for the debts,

12 obligations, or other liabilities of the limited liability

13 company."  Cal. Corp. Code § 17708.01.  This statutory language

14 "encompasses the determination of an LLC's alter ego liability."

15 MacRae v. HCR Manor Care Servs., LLC, No. SACV140715DOCRNB, 2017

16 WL 11480091, at *3 (C.D. Cal. Sept. 14, 2017).  Accordingly,

17 federal courts in California apply the law of the state of

18 incorporation in assessing the alter ego of an LLC.  See e.g.,

19 Greenlight Sys., LLC v. Breckenfelder, No. 19-CV-06658-EMC, 2021

20 WL 2651377, at *17 (N.D. Cal. June 28, 2021), aff'd, No. 21-

21 16245, 2022 WL 17222415 (9th Cir. Nov. 25, 2022) (applying Ohio

22 law because it was the state of incorporation); Wehlage, 821 F.

23 Supp. 2d at 1128-29 (applying Washington law because it was the

24 state of incorporation); MacRae, 2017 WL 11480091 at *3 (applying

25 Delaware law for the alter ego analysis of a Delaware LLC, and

26 applying Ohio law for the alter ego analysis of an Ohio LLC).

27      Because Ness is an LLC incorporated in Delaware, the Court

28 applies Delaware law in its alter ego analysis.  See Request for

4

1  Judicial Notice.  The Deckers agree with this conclusion, and
2  Plaintiff does not address this question.  <u>See</u> Mot. at 7; <u>see</u>
3  <u>generally</u> Opp'n.

4      In <u>NetJets</u>, the Second Circuit applied Delaware law in
5  determining whether a corporation was the alter ego of an
6  individual.  It held that the relevant standard is "whether the
7  two entities operated as a single economic entity such that it
8  would be inequitable for the Court to uphold a legal distinction
9  between them."  <u>NetJets Aviation, Inc. v. LHC Commc'ns, LLC</u>, 537
10 F.3d 168, 177 (2d Cir. 2008) (cleaned up).  The court thus
11 articulated a "two-pronged test . . . (1) whether the entities in
12 question operated as a single economic entity, and (2) whether
13 there was an overall element of injustice or unfairness."  <u>Id.</u>;
14 <u>see also</u> <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1457 (2d Cir.
15 1995).

16      1.   <u>Single Economic Entity</u>

17      The <u>NetJets</u> court held that the "alter ego analysis must
18 start with an examination of factors which reveal how the
19 corporation operates and the particular defendant's relationship
20 to that operation.  These factors include whether the corporation
21 was adequately capitalized for the corporate undertaking; whether
22 the corporation was solvent; whether dividends were paid,
23 corporate records kept, officers and directors functioned
24 properly, and other corporate formalities were observed; whether
25 the dominant shareholder siphoned corporate funds; and whether,
26 in general, the corporation simply functioned as a facade for the
27 dominant shareholder."  <u>NetJets</u>, 537 F.3d at 176-177 (citation
28 omitted).  The court recognized that "somewhat less emphasis is

1   placed on whether the LLC observed internal formalities because

2   fewer such formalities are legally required" in Delaware.  Id. at

3   178.  The court continued that "no single factor can justify a

4   decision to disregard the corporate entity" and, instead, "some

5   combination of them is required."  Id. at 177 (internal quotation

6   marks and citation omitted).

7       Here, Plaintiff argues that Ness was undercapitalized and

8   insolvent, and that it simply functioned as a façade for the

9   Deckers.

10                  a.   Undercapitalized and Insolvent

11      Plaintiff makes the following relevant allegations: Ness

12  "was created without assets for the express and specific purpose

13  of entering into the Lease," Compl. ¶ 13(f); Ness could not

14  demonstrate its solvency, so the Deckers "each submitted their

15  own individual finances" to enter the Lease, id. ¶ 13(k); Ness

16  "on or about December 4, 2023, . . . admitted in writing that it

17  cannot afford to perform the construction it needs to on the"

18  leased property, id. ¶ 13(d); and Ness "on or about December 15,

19  2023, . . . admitted in writing that one of the reasons it was

20  abandoning its obligations under the Lease was that" regulations

21  were "prohibitively expensive," id. ¶ 13(e).

22      Taken together, these allegations plausibly state that Ness

23  was undercapitalized and insolvent.

24                  b.   Functioned as a Facade

25      To demonstrate that Ness functioned as a façade for the

26  Deckers, Plaintiff alleges: Ness was "a mere shell,

27  instrumentality, and conduit[] through which" the Deckers

28  exercised "complete control and dominance," id. ¶ 13(a); the

                                    6

Deckers formed Ness for the "express and specific purpose of entering into the Lease," id. ¶ 13(f); Ness was "controlled, dominated, and operated by" the Deckers, id. ¶ 13(i); the business affairs of the Deckers and Ness are "so mixed and intermingled that the same cannot be reasonably segregated," id. ¶ 13(j); the Deckers and Ness were "commingling its assets with one another," id. ¶ 14; neither Ness nor the Deckers made any payment under the lease, id. ¶ 69; and the Deckers formed "a financially insolvent entity" "to avoid any liability related to the injury Plaintiff suffered," id. ¶¶ 13(b), 14.  These allegations plausibly state that Ness functioned as a façade for the Deckers, who exercised complete control over the entity.

    Other evidence supports these allegations.  The Deckers' Request for Judicial Notice indicates that they formed Ness for the sole purpose of entering into the agreement with Plaintiff. The public record shows that Ness was formed on June 6, 2023. See Request for Judicial Notice.  Just a week later, on June 13, 2023, Adam Decker made an offer to Plaintiff for the leased property, and on September 19, 2023, Plaintiff entered into the contract with Ness.  See Compl. ¶¶ 17, 23.  To be sure, the Deckers admit in their brief that Ness "was formed for the sole purpose of building and operating a Tommy's Express Car Wash Franchise" on the leased property.  See Reply at 2.

    Also, the Deckers previously stated that Ness is "wholly owned by parent company" Ness Express Holdings.  See Rule 7.1 Corporate Disclosure Statement, ECF No. 2.  The Deckers also admit that they are the "sole members of Ness Holdings," which means they exclusively and completely control Ness.  See id.; see

7

1  <u>also</u> Mot. at 5 (Deckers stating that they own Ness Holdings, and
2  that Ness Holdings is the sole member of Ness).

3      Accordingly, Plaintiff has sufficiently alleged that Ness
4  functioned as a façade for the Deckers, and the Deckers
5  maintained complete and exclusive control over Ness.  Taken
6  together with Plaintiff's allegations regarding
7  undercapitalization and insolvency, the Court finds that a
8  combination of factors supports disregarding the corporate
9  entity.  <u>See</u> <u>NetJets</u>, 537 F.3d at 177.

10          2.  <u>Element of Injustice or Unfairness</u>

11      "[T]he plaintiff need not prove that the corporation was
12  created with fraud or unfairness in mind.  It is sufficient to
13  prove that it was so used."  <u>NetJets</u>, 537 F.3d at 177.  The
14  <u>NetJets</u> court held that "the claimed injustice must consist of
15  more than merely the tort or breach of contract that is the basis
16  of the plaintiff's lawsuit . . . [b]ut nothing prevents a court,
17  in determining whether there is sufficient evidence of fraud or
18  unfairness, from taking into account relevant evidence that is
19  also pertinent to the question of whether the two entities in
20  question functioned as one."  <u>NetJets</u>, 537 F.3d at 183.  Indeed,
21  courts applying Delaware law have found that, for a motion to
22  dismiss, "[a]llegations of undercapitalization and siphoning of
23  funds are sufficient to satisfy the 'injustice or unfairness'
24  element."  <u>See</u> <u>Essar Steel Algoma Inc. v. Nevada Holdings, Inc.</u>,
25  No. 17MISC360ATRWL, 2020 WL 2539031, at *4 (S.D.N.Y. May 18,
26  2020) (collecting cases).

27      As explained above, Plaintiff has sufficiently alleged that
28  Ness was undercapitalized, insolvent, and a façade for the

Deckers.  Taken as true for the purposes of this motion, these allegations demonstrate that the Deckers abused the corporate form to promote injustice.  In line with other courts applying Delaware law, the Court therefore finds that these allegations satisfy the injustice or unfairness element to survive a motion to dismiss.  See e.g., McBeth v. Porges, 171 F. Supp. 3d 216, 234 (S.D.N.Y. 2016) ("[T]he allegations regarding the commingling of personal and corporate assets and the insufficient capital to cover expenses plausibly plead an 'inequitable use of the corporate form.'"); TradeWinds Airlines, Inc. v. Soros, No. 08 Civ. 5901, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012) (finding that the allegation that defendants improperly left a corporation undercapitalized was sufficient to show fundamental injustice); Blair v. Infineon Techs. AG, 720 F. Supp. 2d 462, 473 (D. Del. 2010) (holding that misdirection of funds, dominating control, and siphoning of funds supported existence of injustice or unfairness).  Accordingly, drawing all inferences in Plaintiff's favor, Plaintiff has satisfied both prongs of this analysis and plausibly stated that the Deckers are the alter ego of Ness.

The Deckers' final argument here is that Plaintiff's allegations of injustice or unfairness fail to satisfy Federal Rule of Civil Procedure 9(b).  A plaintiff "must satisfy Rule 9(b)'s particularity standard as to the fraud element of plaintiff's alter ego theory."  Wimbledon Fund, SPC v. Graybox, LLC, No. CV15-6633-CAS(AJWX), 2016 WL 7444709, at *5 (C.D. Cal. Aug. 31, 2016) (collecting cases).  This rule requires a plaintiff to plead allegations of fraud with particularity,

1  including the "circumstances constituting fraud or mistake."

2  Fed. R. Civ. P. 9(b).

3      The Deckers argue that Plaintiff failed to satisfy Rule 9(b)

4  because it did not provide "further elaboration of what the

5  injustice would be" if the Court found that the Deckers are not

6  the alter ego of Ness.  See Mot. at 12 (internal quotation marks

7  and citation omitted).  But Plaintiff has sufficiently pled that

8  the injustice would be that the Deckers "would avoid any

9  liability" in this action.  See Compl. ¶ 14.  Moreover, none of

10  the cases the Deckers cite for this proposition applied Delaware

11  law.  See Mot. at 11-12.  In the most relevant case cited, the

12  court held that "the mere allegation that [the corporation] is

13  undercapitalized is not enough to imply an unjust result."  Orosa

14  v. Therakos, Inc., No. C-11-2143 EMC, 2011 WL 3667485, at *7

15  (N.D. Cal. Aug. 22, 2011).  But Orosa is inapposite because the

16  court there found that the plaintiff failed to satisfy the first

17  prong of the alter ego analysis, and thus the court did not

18  consider whether a sufficient undercapitalization allegation

19  satisfied the injustice element.  See id. at *6 ("Plaintiff's

20  allegations are insufficient to satisfy either prong of the alter

21  ego theory").  Regardless, courts applying Delaware law are clear

22  that Plaintiff's allegations are sufficient to satisfy the

23  injustice or unfairness prong on a motion to dismiss.

24      As such, Plaintiff has adequately alleged here that the

25  Deckers created a shell corporation they completely controlled

26  for the sole purpose of entering the lease, violated the terms of

27  that lease, and now are hiding behind an undercapitalized and

28  insolvent corporation to avoid liability for injuries suffered by

10

1  Plaintiff.  These allegations satisfy the heightened pleading
2  standard and show bad faith conduct on the part of the Deckers.
3  Accordingly, Plaintiff has sufficiently pled that the Deckers are
4  the alter ego of Ness.

5             3.   Federal Rule of Civil Procedure 8(a)

6       The Deckers' only remaining argument in support of their
7  motion to dismiss is that Plaintiff failed to satisfy Federal
8  Rule of Civil Procedure 8(a)(2), which requires "a short and
9  plain statement of the claim" to put defendants on sufficient
10 notice of the allegations against them.  Fed. R. Civ. P. 8(a)(2).
11 The Deckers contend that Plaintiff fails to differentiate between
12 them throughout its complaint.  See Mot. at 10.  But the
13 complaint is clear that the Deckers are alleged to have engaged
14 in the same conduct: forming Ness to enter the lease and then
15 violating the agreement.  Accordingly, Plaintiff has presented a
16 plain statement of the claim such that each of the Deckers are on
17 sufficient notice of the allegations against them.

18                          III.   ORDER

19      For the reasons set forth above, Defendants' motion to
20 dismiss is DENIED.  Adam Decker and Joseph Decker are hereby
21 ordered to answer the complaint within fourteen (14) days of this
22 Order.

23      IT IS SO ORDERED.

24 Dated: November 6, 2024

25

26

27                                 JOHN A. MENDEZ
                                   SENIOR UNITED STATES DISTRICT JUDGE
28

                                  11